United States District Court
Southern District of Texas

**ENTERED**

March 27, 2017

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DARNELL SENEGAL, individually and on behalf of others similarly situated | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-16-2113 |
| FAIRFIELD INDUSTRIES, INC., d/b/a FAIRFIELD NODAL, | § § § | |
| Defendant. | § § | |

<u>**MEMORANDUM OPINION**</u>

Pending before the court[1] is Plaintiff's Motion to Certify Class (Doc. 59). The court has considered the motion, Defendant's response (Doc. 63), Plaintiff's reply (Doc. 65), all other relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Plaintiff's motion with the modifications to the proposed class notice as discussed herein.

## I. Case Background

Darnell Senegal ("Plaintiff") filed this action against Fairfield Industries, Inc. ("Defendant") under the Fair Labor Standards Act[2] ("FLSA").[3] Plaintiff alleged that Defendant violated the FLSA by failing to pay Plaintiff and other similarly situated

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. <u>See</u> Doc. 46, Ord. Dated Sept. 27, 2016.

[2]    <u>See</u> 29 U.S.C. §§ 201-219.

[3]    <u>See</u> Doc. 41, Pl.'s 1st Am. Compl.

employees for hours worked over forty in a week.[4]

## A.  **Factual Background**

Defendant offers geological survey services to the oil and gas industry by using oceanographic seismic vessels to perform the surveys.[5]  These vessels had a marine crew and a seismic crew.[6] Plaintiff worked as part of the seismic crew, which consisted of observers, the gun department, mechanics, navigators, and marine mammal observers.[7]  The observers "were generally responsible for hanging the 'nodes' on the lines and deploying and retrieving them" as well as "remov[ing] the nodes after they were retrieved and secur[ing] and stor[ing] the lines and nodes."[8]  The gun department's role was to set up the air guns that were towed behind the vessel on strings, to bring the air guns back on the vessel for storage, and maintain the air guns and firing lines.[9]  The mechanics maintained the survey equipment, including the compressor for the air guns and the conveyor used in the release and return of the nodes.[10]  The navigators oversaw the gun mechanics and observers

---

[4]    See id.

[5]    See Doc. 59-1, Ex. A to Pl.'s Mot. to Certify, Decl. of Pl. pp. 1-2.

[6]    See  Doc. 63-1, Ex. 1 to Def.'s Resp., Decl. of Comb p. 1.

[7]    See Doc. 59-1, Ex. A to Pl.'s Mot. to Certify, Decl. of Pl. p. 2.

[8]    Id.

[9]    See id. p. 3.

[10]   See id.

in the collection of data.[11]  Plaintiff was employed by Defendant from August 1994 to May 2016, and worked as a lineman, boat operator, gun mechanic helper, and gun mechanic shift leader.[12]

Everyone on the seismic crew was employed by Defendant, and the seismic crew had consistent duties on all of Defendant's ships.[13]  When Plaintiff was hired, he was told that he would work a twenty-eight day hitch, followed by twenty-eight days off.[14] Plaintiff averred that he was paid on a day-rate basis for twelve hours of work, and that Defendant told him that he would receive overtime if he exceeded twelve hours in a day.[15]  Plaintiff was scheduled to work twelve hours a day, seven days a week and was additionally required to spent his time off participating in other activities, such as training sessions or unloading food and other supplies.[16]  Plaintiff averred that he often worked more than twelve hours a day but did not receive compensation for this overtime.[17] When Plaintiff was not on board the vessel, he attended licensing classes, submitted to physical exams, and unloaded equipment.[18]

---

[11]    See id.

[12]    See id.

[13]    See id.

[14]    See id.

[15]    See id.

[16]    See id.

[17]    See id. p. 4.

[18]    See id. p. 4.

Plaintiff never recorded his hours while working for Defendant.[19]

Comb averred that the day-rate included weekly compensation for 47.5 hours of overtime, and that employees had to receive authorization to work more than 87.5 hours a week.[20]  Defendant paid Plaintiffs pursuant to this day-rate plan from 2000 through December 2015.[21]  Defendant ceased all operation and ownership of vessels in May 2016.[22]

**B.    Procedural Background**

Plaintiff filed his complaint on July 15, 2016, alleging violations of the FLSA.[23]  Forty other putative class members have opted into the lawsuit as of the date of this opinion.[24]  Plaintiff filed an amended complaint on September 26, 2016.[25]

Plaintiff filed the pending motion to certify class on November 14, 2016, seeking to certify the following class: "All current and former seismic crewmembers employed by [Defendant] and paid on a day-rate basis at any time during the last three years."[26]

---

[19]    See id.

[20]    See Doc. 63-1, Ex. 1 to Def.'s Resp., Decl. of Comb p. 4.

[21]    See id.

[22]    See id.

[23]    See Doc. 1, Pl.'s Compl.

[24]    See Docs. 5-14, 16-22, 25-31, 34-36, 40, 47-51, 53-54, 56-57, 64, 66, 76, Consents to Join a Collective/Class Action.

[25]    See Doc. 41, Pl.'s 1st Am. Compl.

[26]    Doc. 59, Pl.'s Mot. to Certify Class p. 2.

The proposed class of seismic crewmembers includes: "observers (i.e., the linesman (or line chiefs), junior observers, shift lead observers, chief observers, and party managers); the gun department (i.e., gun mechanic helpers, gun mechanic trainees, gun mechanics, gun shift leaders, and gun mechanic chiefs); the mechanics (i.e., compressor mechanics and back deck mechanics); the navigators (i.e., the navigators, shift lead navigators, and chief navigators); and marine mammal observers.[27] Plaintiff asks the court to (1) conditionally certify the proposed class; (2) authorize notice to potential class members; and (3) order Defendant to provide contact information for all seismic crew members who were employed by Defendant, its parent, subsidiaries, or affiliates within the last three years.[28]

Defendant responded to Plaintiff's motion to certify class on December 12, 2016, challenging the class and Plaintiff's form of proposed notice.[29]

## II.  Legal Standard

The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours.  29 U.S.C. § 207(a).  It allows employees to bring an action against their employers for violation of its hour and wage provisions.  _See_

---

[27]     _See_ _id._

[28]     _See_ _id._ p. 14.

[29]     _See_ Doc. 63, Def.'s Resp. to Pl.'s Mot. to Certify Class ("Def.'s Resp.").

5

29 U.S.C. §§ 215-216. An employee may bring this action against his employer on "behalf of himself . . . and other employees similarly situated. No employee shall be a party plaintiff to any such an action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). Courts have the authority to implement the representative action process by facilitating notice to potential plaintiffs, in other words, to persons alleged to be "similarly situated" to the named plaintiff(s). Hoffman-La Roche, Inc. v. Sperling, 493 U.S. 165, 171-74 (1989).

In the Fifth Circuit, the determination of whether plaintiffs are similarly situated is generally made by using one of two analyses: (1) the two-step analysis described in Lusardi v. Xerox Corp., 118 F.R.D. 351, 359 (D.N.J. 1987); or (2) the "spurious class action" analysis described in Shushan v. Univ. of Colo., 132 F.R.D. 263 (D. Colo. 1990). See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (expressly declining to decide which of the two analyses is appropriate).[30]

Under the Lusardi approach, the court first "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d

---

[30]    Mooney was an action under the Age Discrimination in Employment Act ("ADEA"), but it is informative here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees. See Mooney, 54 F.3d at 1212.

516, 519 (5th Cir. 2010) (citing <u>Mooney</u>, 54 F.3d at 1213-14).  The court makes this determination by using a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." <u>Mooney</u>, 54 F.3d at 1214 & n.8.  If the court determines that the employees are similarly situated, then notice is sent and new plaintiffs may "opt in" to the lawsuit.  <u>Acevedo</u>, 600 F.3d at 519 (citing <u>Mooney</u>, 54 F.3d at 1214).  Next, once discovery has largely been completed and, thus, more information on the case made available, the court makes a final determination on whether the plaintiffs are similarly situated and whether they can proceed together in a single action.  <u>Id.</u>

According to the Fifth Circuit, the <u>Shushan</u> approach, known as the "spurious class action" analysis, is similar to the class certification procedure used under Federal Rule of Civil Procedure 23 ("Rule 23"):

> <u>Shushan</u> espouses the view that [29 U.S.C. § 216(b) ("Section 216(b)")] merely breathes new life into the so-called "spurious" class action procedure previously eliminated from [Rule 23].  Building on this foundation, the court determined that Congress did not intend to create a completely separate class action structure for the FLSA . . . context, but merely desired to limit the availability of Rule 23 class action relief under . . . [the FLSA].  In application, the court determined that Congress intended the "similarly situated" inquiry to be coextensive with Rule 23 class certification.  In other words, the court looks at "numerosity," "commonality," "typicality" and "adequacy of representation" to determine whether a class should be certified.  Under this methodology, the primary distinction between a . . . . [FLSA] representative action and a [Rule 23] class

7

> action is that persons who do not elect to opt-in to the
> . . . [FLSA] representative action are not bound by its
> results.  In contrast, Rule 23 class members become party
> to the litigation through no action of their own, and are
> bound by its results.

<u>Mooney</u>, 54 F.3d at 1214.

The Fifth Circuit has not ruled which method the courts should use to determine whether plaintiffs are sufficiently similarly situated to advance their claims together in a single action under Section 216(b).  <u>Acevedo</u>, 600 F.3d at 518-19.  Although it has stated that not all class action standards are applicable to Section 216(b) actions, the court has explicitly left open the question of whether the <u>Lusardi</u> approach, the <u>Shushan</u> approach, or a third approach should be used in determining whether employees' claims are sufficiently similar to support the maintenance of a representative action.  <u>Id.</u> (citing <u>Mooney</u>, 54 F.3d at 1216; <u>LaChapelle v. Owens-Ill., Inc.</u>, 513 F.2d 286, 288 (5th Cir. 1975)).

However, most courts in this district follow the <u>Lusardi</u> approach in suits brought under Section 216(b).  <u>See, e.g.,</u> <u>Tolentino v. C & J Spec-Rent Servs., Inc.</u>, 716 F. Supp.2d 642, 646 (S.D. Tex. 2010) (collecting cases).  The <u>Lusardi</u> approach is consistent with Fifth Circuit dicta stating that the two-step approach is the typical manner in which these collective actions proceed.  <u>Sandoz v. Cingular Wireless LLC</u>, 553 F.3d 913, 915 n.2 (5th Cir. 2008).  The Fifth Circuit has also stated that "[t]here is a fundamental, irreconcilable difference between the class

8

action described by Rule 23 and that provided for by [Section 216(b)]," in other words, the "opt out" procedure for class members under Rule 23 as opposed to the "opt in" procedure under Section 216(b). LaChapelle, 513 F.2d at 288; see also Donovan v. Univ. of Tex. at El Paso, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The FLSA procedure, in effect, constitutes a congressionally developed alternative to the [Rule 23] procedures."). This court, therefore, will analyze Plaintiff's claims using the Lusardi method.

The present case is at the "notice stage" of the Lusardi analysis. At this stage, the court's decision is "made using a fairly lenient standard;" a plaintiff need only make a minimum showing to guide the court's determination whether to issue notice to potential class members. Mooney, 54 F.3d at 1214.

In the absence of Fifth Circuit guidance on the appropriate test to use at the notice stage of the Lusardi analysis, courts are split on the appropriate elements to consider in determining whether to grant conditional certification. Some courts use three elements, requiring the plaintiff to show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit. See, e.g., Cantu v. Vitol, Inc., No. H-09-0576, 2009 WL 5195918, at *4 (S.D. Tex. Dec. 21, 2009) (unpublished); Tolentino,

9

716 F. Supp.2d at 653.  Other courts, however, have rejected the third, non-statutory element.  <u>See, e.g.</u>, <u>Jones v. Cretic Energy Servs., LLC</u>, 149 F. Supp.3d 761, 768 (S.D. Tex. 2015); <u>Dreyer v. Baker Hughes Oilfield Operations, Inc.</u>, No. H-08-1212, 2008 WL 5204149, *3 (S.D. Tex. Dec. 11, 2008) (unpublished); <u>Heckler v. DK Funding, LLC</u>, 502 F. Supp.2d 777, 780 (N.D. Ill. 2007).

This court is persuaded by the latter group of cases that have rejected the third element, as it is not statutorily required.  <u>See</u> <u>Jones</u>, 149 F. Supp.3d at 762.  This reasoning is consistent with the instruction from the Supreme Court that the FLSA be liberally construed to carry out its purposes.  <u>Id.</u> (citing <u>Tony & Susan Alamo Found. v. Sec'y of Labor</u>, 471 U.S. 290, 296 (1985)).  Therefore, the court finds that it is enough for Plaintiff to present evidence that there may be other aggrieved individuals who should be noticed without requiring evidence that those individuals actually want to join the lawsuit.

### III. Analysis

The court will first address Defendant's challenges to Plaintiff's class certification and then will turn to Defendant's objections to Plaintiff's proposed class notice.

## A.  <u>Class Certification</u>

Defendant argues that Plaintiff's class should not be certified and reminds the court that certification of a class is not automatic.  The court agrees that while the burden for a

plaintiff is low, class certification not automatic. See Sandel v. Fairfield Indus., Inc., No. H-13-1596, 2014 WL 1379902 (S.D. Tex. Apr. 8, 2014)(unpublished).   In order to obtain a class certification, Plaintiff must show "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." Mooney, 54 F.3d at 1214 & n. 8.  Plaintiff must provide evidence to establish a reasonable belief that aggrieved individuals exist and that the aggrieved individuals are similarly situated. Cantu, 2009 WL 5195918, at *4.

### 1. Exemptions

After this lawsuit was filed, forty individuals filed opt-in notices.  Defendant specifically challenges the opt-in marine crew members, arguing that they should be dismissed because, as seamen, they are exempt from the FLSA.   Defendant states that despite Plaintiff's agreement that the marine crew members were not proper opt-ins in this case and would be dismissed, no motion to dismiss has been filed.  Defendant also contends that some of the putative class members are exempt under 29 U.S.C. § 213(f) because they worked on foreign-flagged vessels in foreign territories.   The final exemption Defendant raises is that managerial offshore seismic crew positions were exempt under 29 U.S.C. § 213(a)(1).

Exemption defenses "are merits-based defenses to FLSA claims that courts in this district typically hold to be irrelevant at

this initial, notice stage of the case." <u>Jones</u>, 149 F. Supp.3d at 768 (S.D. Tex. 2015) (providing examples of other cases supporting this proposition); <u>see</u> <u>also</u> <u>Turner v. Nine Energy Serv.</u>, No. H-15-3670, 2016 WL 6638849 (S.D. Tex. Oct. 4, 2016)(unpublished).   Even if an exemption defense may apply to a case, that is not enough to prevent conditional certification of a class.   <u>Dreyer</u>, 2008 WL 5204149, at *3 (citing <u>Foraker v. Highpoint Sw., Servs., LP</u>, No. H-06-1856, 2006 WL 2585047, at *4 & n. 16 (S.D. Tex. Sept. 7, 2006)(unpublished)); <u>see also</u> <u>Albanil v. Coast 2 Coast, Inc.</u>, No. H-08-486, 2008 WL 4937565, at *7 (S.D. Tex. Nov. 17, 2008)(unpublished)("defendants' assertion of an exemption, alone, is an insufficient basis for denying conditional certification and notice").

The second stage of the <u>Lusardi</u> analysis is "typically precipitated by a motion for 'decertification' by the defendant usually filed after discovery is largely complete . . . [a]t this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question." <u>Mooney</u>, 54 F.3d at 1214.   Exemption defenses are properly considered in the second stage of the <u>Lusardi</u> analysis. <u>Falcon v. Starbucks Corp.</u>, 580 F. Supp.2d 528, 534 (S.D. Tex. 2008).

Therefore, Defendant's arguments that the putative class members are not similarly situated because of the applicability of

certain merits-based exemption defenses are not proper to defeat class certification.  These merits-based defenses are more properly raised in a later stage of the lawsuit.

### 2.  Marine Crew

Defendant's argument that the marine crew members are exempt from the FLSA and therefore are not properly part of this lawsuit arguably falls within the merits-based exemption defense that may only be considered after the conditional certification stage. However, the court finds that the marine crew members are not properly a part of this lawsuit, as Plaintiff has only asked the court to certify a class of seismic crew members.  Despite this limitation, a number of the marine crew have filed consents to join the class.  Comb averred that the following opt-ins were members of the marine crew, not the seismic crew during the relevant time period for this case: Adamo Carey, William McIntyre, Clary Reed, Phillip Thompson, Eugene Williams, Eric Johnson, Darrell Hoover, John Harper, Randel Hansen, Dale Williams, Stephen Hawkins, Charles Hines, Justin Mather, Marcus Bartlett, Joseph Furrow, Brian Honaker, Cedric Braxton, and Arnel Vasquez.[31]  The court will only certify a class for seismic crew members, so to the extent that marine crew members have opted into this lawsuit, they are dismissed as they are not part of the class that Plaintiff has asked the court to certify.

---

[31]     See id. p. 4.

### 3. Pre- and Post- Shift Claims

Defendant challenges Plaintiff's proposed class, arguing that Plaintiff's pre- and post-shift claims require an individualized analysis making the putative class members not similarly situated.

The court agrees with Defendant that whether the putative class members claims for pre- and post-shift work are compensable must be analyzed under the Integrity Staffing Solutions, Inc. v. Busk, ___ U.S. ___, 135 S. Ct. 513 (2014) framework. Sandel, 2015 WL 7709583, at *2. However, the court does not find that this type of analysis makes the putative class members not similarly situated. In the thirteen declarations submitted by Plaintiff, the putative class members aver that they all had to complete work-related activities such as attending meetings and trainings and helping load supplies onto the vessel outside of their normal work hours. In support of its motion, Defendant cites non-controlling authority and argues that this type of analysis makes conditional certification improper. However, the court is unaware of any case from this circuit supporting this argument, and in Sandel, the court certified a similar class against Defendant, based on similar claims of pre- and post-shift work. Plaintiff may assert pre- and post-shift claims on a class basis.

### 4. Appropriate Pay Policies

Defendant argues that because its pay policies were appropriate and the putative class members were compensated for

14

overtime, Plaintiff's motion for class certification should be denied.

When an employer has and enforces appropriate pay policies, courts are reluctant to grant conditional certification. <u>Lindsey v. Harris County</u>, No. H-15-630, 2015 WL 6835408, at *5 (S.D. Tex. Nov. 6, 2015)(unpublished)(citing <u>Nieddu v. Lifetime Fitness</u>, 977 F. Supp.2d 686, 703 (S.D. Tex. 2013)). Defendant has provided evidence that: (1) its day rate took into account that Plaintiff and other opt-ins were compensated for 87.50 hours per week that included 47.50 hours of overtime compensation at the overtime rate; and (2) most of the opt-in plaintiffs signed an acknowledgment form that explained the calculation of the day-rate plan and notified them that they were to obtain permission if they worked over 87.50 hours in a workweek.

However, in the declarations submitted in support of this motion, the opt-ins averred that they were not paid overtime and that they regularly worked more than twelve hours a day. Additionally, Plaintiff challenges Defendant's assertion that its day-rate policy was appropriate under the Department of Labor's regulations. Unlike in <u>Lindsey</u>, where the declarants had no personal knowledge that others worked more than forty hours a week, thirteen opt-ins in this action have submitted declarations stating that they were subject to Defendant's day-rate plan, and through conversations with other coworkers, knew that others were subject

to the same plan, demonstrating a common policy or plan affecting the putative class members.  Notably, Defendant does not challenge the existence of a common pay policy or plan.

### 5.  Job Positions and Responsibilities

Defendant argues that the putative class members are not similarly situated because their jobs consisted of vastly different requirements.  Plaintiff argues that the opt-ins do not need to have identical job duties for class certification and that they were all subject to the common policy or plan of day-rate pay.

Job positions "need not need be identical" but must be similar enough to arise under circumstances that apply equally to all potential class members.  Lindsey, 2015 WL 6835408, at *6 (citing Nieddu, 977 F. Supp.2d at 691); Tolentino, 716 F. Supp.2d at 647.

In support of his motion to certify class, Plaintiff submitted thirteen declarations from opt-ins that discussed their past work for Defendant.  While the job titles held by the opt-ins may have varied, all worked for Defendant as members of the seismic crew and were subject to a common plan or policy.  The court finds that Plaintiff has met his burden to show that there are aggrieved individuals who are similarly situated.

### 6.  Scope of the Class

Defendant takes issue with the scope of the class as defined by Plaintiff in its motion to certify.  Defendant does not dispute in its response that the seismic crew includes the positions as

16

defined by Plaintiff in his motion.  However, Defendant argues that the scope is broader than what Plaintiff sought in his amended complaint which included only linemen and gun mechanics and broader than the scope of the class in Sandel.

In Sandel, the plaintiff asked for the certification of a class of seismic crewmembers that included compressor mechanics, air gun mechanics (including gun mechanic helpers), back deck mechanics, and line chiefs.  Sandel v. Fairfield Indus., Inc., No. H-13-CV-1596, Doc. 9 n. 1 (S.D. Tex. Nov. 15, 2013).  The court acknowledges that the class as proposed is broader than the amended complaint.  However, in light of the numerous declarants who have averred that as members of the seismic crew they were subject to a single pay policy, as a matter of judicial economy, the court will not require piecemeal litigation.  The class will encompass all of those persons on a seismic crew who were subject to a day-rate compensation plan.

B.  Proposed Notice

Defendant objects to Plaintiff's proposed form of notice on several bases.[32]

**1.  Court-Sponsored Notice**

Defendant objects to a court-sponsored notice in this case, arguing that it would not serve the purposes of the FLSA.

---

[32]    In his reply, Plaintiff states that he will work with Defendant's counsel to fix any disputes over the proposed notice.  However, the court still is inclined to rule on Defendant's objections to the proposed notice.

17

Defendant states that notice in this case is unnecessary because of the <u>Sandel</u> litigation and complains that Plaintiffs' attorneys used that lawsuit to create interest in this case.

"Courts have discretion in deciding how notice is distributed." <u>Sandel</u>, 2014 WL 1379902, at *4 (citing <u>Mooney</u>, 54 F.3d at 1214). The court finds that the broad remedial purposes of the FLSA warrant notice to potential class members with no exceptions. Therefore, the court finds that it is proper to have court-sponsored notice in this case.

### 2. Form and Contents

Defendant raises several objections to the form and contents of Plaintiff's proposed notice, including: (1) the scope of the class; (2) the notice's neutrality is not emphasized; (3) the lack of specificity; (4) the failure to explain of Defendant's bases for disputing liability; (5) the absence of a description of the potential class member's rights; and (6) the absence of information about the potential class member's obligations.

Defendant's objection that the scope of the class should be limited to air gun mechanics and linemen is overruled, for the reasons explained above. Defendant also objects that the time period should be limited from July 15, 2013, to December 18, 2015, as Defendant ceased the day-rate payment plan on the latter date. Plaintiff does not contest this argument, however as the class includes only those persons who were paid on a day-rate basis, the

class should not include post-December 18, 2015 claims.

Defendant complains that the notice does not make it clear that the court is a neutral party and that the court's authorization is emphasized too much. In In re Wells Fargo Wage & Hour Employment Practices Litigation (No. III), No. H-11-2266, 2013 WL 2180014, at *5 (S.D. Tex. May 17, 2013)(unpublished), the court found that the inclusion of a statement about the court's authorization of the notice was proper because it "merely state[d] a fact" and its inclusion clarified the stage of the lawsuit. Here, the court agrees, finding that the statement in the notice that the court has approved the notice is merely stating a fact. Additionally, the first section of the notice contains a clear statement of neutrality that "the Court has not expressed any view as to whether any current or former [employees of Defendant] are owed unpaid overtime."[33]  Finally, the court finds that it is necessary to let the potential class members know the stage of the lawsuit by including the statement that the notice has been approved by the court.  See id.  Therefore, Defendant's objection is overruled.

Defendant next objects that the notice does not provide enough background information to potential class members and that it is too broad because it states that seismic workers can pursue any

_____

[33]    The court finds that Plaintiff left out "employees of" in this sentence and orders Plaintiff to add this in to make it clear to whom it is referring.

claims for unpaid wages. The court overrules this objection because the notice makes clear that the lawsuit has been brought for unpaid overtime, as evidenced by the statement that "[f]ormer seismic workers have brought a lawsuit against [Defendant] for unpaid overtime pay."[34]

Defendant argues that the notice does not include a brief explanation of its legal bases for disputing liability. The statement included in the notice, as to Defendant's denial of liability, states that Defendant "denies that it did anything wrong and that any of its employees are entitled to additional pay."[35] In Tolentino and Yaklin v. W-H Energy Servs., Inc., No. C-07-422, 2008 WL 1989795, at *4 (S.D. Tex. May 2, 2008)(unpublished), the court held that the notice should include a brief explanation of the bases on which defendants were disputing liability. The court finds that Defendant's objection should be overruled.

Defendant complains that the proposed notice is not clear about the potential class members' rights and should include a statement that the potential class members may choose their own counsel. The court agrees, sustaining Defendant's objection, as the notice "must inform potential class Plaintiffs that they may contact any attorney of their choosing to discuss the case."

---

[34]    Doc. 59-14, Ex. N to Pl.'s Mot. to Certify Class, Proposed Notice p. 1.

[35]    Id.

<u>Tolentino</u>, 716 F. Supp.2d at 655 (citing <u>Yaklin</u>, 2008 WL 1989795, at *4; <u>Moran v. Ceiling Fans Direct, Inc.</u>, No. H-06-0813, 2006 WL 2868939, at *2 (S.D. Tex. Oct. 5, 2006)(unpublished)).

Defendant also challenges the notice's advisement about the applicable statute of limitations, arguing that the language is too strong. In <u>In re Wells Fargo</u>, the court revised the language regarding the statute of limitations, stating that it was "too coercive" because it "improperly ma[de] it appear that all potential plaintiffs must opt in to this lawsuit if they desire[d] to bring claims." 2013 WL 2180014, at *6. However, the language regarding the statute of limitations in this case is not as coercive, as the proposed notice merely explains that potential class members are "under no obligation to join" but that "[e]very day that passes potentially reduces any recovery you might receive because of the law's statute of limitations."[36] The court finds that this language is not overly coercive and adequately informs potential class members about their rights under the law.

Defendant's final objection to the form and contents of the notice is that the potential class members should be warned of their obligations if they join their lawsuit. Defendant first takes issue with the statement that the opt-in plaintiffs "will not have to pay the lawyers, win or lose," stating that it "alludes to a fee contract and counsel's intent to seek attorney fees should

---

[36]    <u>Id.</u>

21

they prevail."[37]   Defendant demands the inclusion of more detail about the fee agreement in the proposed notice.   The court overrules this objection because Plaintiff does more than "allude" to a fee contract.   Plaintiff states that there is a fee contract that governs how the lawyers will be paid and that the lawyers will pursue payment from Defendant if they prevail in the action. However, the court agrees with Defendant's other objection that it is appropriate that potential class members be advised that they may have to participate in written and oral discovery, or testify at trial, and thereby orders Plaintiff to include this information in the proposed notice.

### 3.  Notice Process

Defendant challenges the notice process, arguing that the signed opt-in forms should be sent directly to the court by the opt-in plaintiffs and not to Plaintiff's counsel.  The court has no objection to what appears to be the usual practice that a plaintiff's counsel collects the signed opt-in notices and files them with the court by the ordered deadline.

Plaintiff requests that reminder notice be sent to potential class members by mail and email thirty days after the first notice is sent.  Defendant objects that it is unnecessary in this case because Plaintiff has not identified any reason for why a reminder notice is necessary.

---

[37]     Doc. 63, Def.'s Resp. p. 29.

22

"District courts are split as to whether reminder notices to potential class members are proper in FLSA actions" but "they have denied requests for reminder notices . . . upon finding them unnecessary." <u>Jones</u>, 149 F. Supp.3d at 776. Here, Plaintiff has failed to provide a reason in its motion or reply why he believes that a reminder notice may be necessary in this case. Therefore, the court sustains Defendant's objection and declines to authorize a reminder notice at this time.

## IV. Conclusion

Based on the foregoing, the court **GRANTS** Plaintiff's motion to certify class. The court **CERTIFIES** this matter as a collective action under 29 U.S.C. § 216(b) with respect to the following class:

> All current and former seismic crewmembers employed by [Defendant] and paid on a day-rate basis at any time during the last three years.[38]

Defendant shall provide Plaintiff, within fourteen days of this opinion, with a list of verified contact information, including names, last known addresses, and email addresses, for all seismic crew members who were employed by Defendant, its parent, subsidiaries, or affiliates within the last three years.

---

[38] As per Plaintiff's definition, seismic crewmembers include: "observers (i.e., the linesman (or line chiefs), junior observers, shift lead observers, chief observers, and party managers); the gun department (i.e., gun mechanic helpers, gun mechanic trainees, gun mechanics, gun shift leaders, and gun mechanic chiefs); the mechanics (i.e., compressor mechanics and back deck mechanics); the navigators (i.e., the navigators, shift lead navigators, and chief navigators); and marine mammal observers.

Plaintiff shall have fourteen days from the receipt of this information to mail the proposed notice, amended as discussed above, to the potential class members.  The opt-in period shall be sixty days from the date the notice is mailed.

**SIGNED** in Houston, Texas, this 27th day of March, 2017.


_____
U.S. MAGISTRATE JUDGE