IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DARNELL SENEGAL, individually and on behalf of others similarly situated | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. H-16-2113 |
| FAIRFIELD INDUSTRIES, INC., d/b/a FAIRFIELD NODAL, | § § § | |
| Defendant. | § § | |

## MEMORANDUM OPINION

Pending before the court[1] is Plaintiff's Motion for Partial Summary Judgment (Doc. 185), Defendant's Motion for Summary Judgment (Doc. 191), and Defendant's Motion for Decertification (Doc. 207). The court has considered the motions, the responses, all other relevant filings, and the applicable law. For the reasons set forth below, the court **GRANTS** Plaintiff's motion for summary judgment in part and **DENIES** it in part, **GRANTS** Defendant's motion for summary judgment in part and **DENIES** it in part, and **DENIES** Defendant's Motion for Decertification.

## I.  Case Background

Darnell Senegal ("Plaintiff") filed this action against Fairfield Industries, Inc. ("Defendant") under the Fair Labor

---

[1]    The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. See Doc. 46, Ord. Dated Sept. 27, 2016.

Standards Act[2] ("FLSA").[3] Plaintiff alleged that Defendant violated the FLSA by failing to pay Plaintiff and other similarly situated employees (collectively "Plaintiffs") their statutorily required overtime pay.[4]

## A. Factual Background

Defendant offers geological survey services to the oil and gas industry by using oceanographic seismic vessels to perform the surveys.[5] These vessels had a marine crew and a seismic crew.[6] Plaintiffs worked as part of the seismic crew, which consisted of observers, the gun department, mechanics, navigators, and marine mammal observers.[7] The observers "were generally responsible for hanging the 'nodes' on the lines and deploying and retrieving them" as well as "remov[ing] the nodes after they were retrieved and secur[ing] and stor[ing] the lines and nodes."[8] The gun department's role was to set up the air guns that were towed behind the vessel on strings, to bring the air guns back on the vessel for

---

[2]   See 29 U.S.C. §§ 201-219.

[3]   See Doc. 41, Pl.'s 1st Am. Compl.

[4]   See id.

[5]   See Doc. 186, App. to Pl.'s Mot. for Partial Summ. J., Decl. of Pl. pp. 1-2.

[6]   See Doc. 245, Ex. 3 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Decl. of Comb p. 1.

[7]   See Doc. 186, App. to Pl.'s Mot. for Partial Summ. J., Decl. of Pl. p. 2.

[8]   Id.

storage, and to maintain the air guns and firing lines.[9]  The mechanics maintained the survey equipment, including the compressor for the air guns and the conveyor used in the release and return of the nodes.[10]  The navigators oversaw the gun mechanics and observers in the collection of data.[11]  Plaintiff was employed by Defendant from August 1994 to May 2016, and worked as a lineman, boat operator, gun mechanic helper, and gun mechanic shift leader.[12]

Everyone on the seismic crew was employed by Defendant, and the seismic crew had consistent duties on all of Defendant's vessels.[13]  The seismic crew on each vessel would work a shift of either twenty-eight or thirty-five days followed by an equal number of days off.[14]  In 2000, Defendant began looking into an alternative way to pay its employees.[15]  Defendant sought the advice of counsel and was advised of a day-rate plan in a March 2000 letter.[16] Defendant was informed that overtime still needed to be paid under

[9]      See id. p. 3.

[10]     See id.

[11]     See id.

[12]     See id.

[13]     See id.

[14]     See Doc. 186, App. to Pl.'s Mot. for Partial Summ. J., Def.'s Resps. to Pl.'s 1st Set of Interrogs. pp. 12-13.

[15]     See Doc. 243-1, Ex. 1 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Decl. of Steve Mitchell p. 3-4.

[16]     See id.; Doc. 186, App. to Pl.'s Mot. for Partial Summ. J., Mar. 3, 2000, Letter pp. 73-75.

the day-rate plan.[17]

Shortly thereafter, Defendant began paying its employees a day rate based on twelve-hour days.[18] Subsequently, Defendant added a half hour per day and started paying its employees based on twelve-and-one-half-hour days.[19] The additional half hour was intended to compensate Defendant's employees for transition times between shifts and safety meetings.[20] Accordingly, Defendant's day-rate plan allegedly pays employees for 87.50 hours per week and incorporates 47.50 hours of overtime per week.[21] Under the day-rate plan, employees made the same amount of pay regardless of the number of hours worked.[22] The parties hotly dispute whether Plaintiffs worked consistent twelve-hour shifts or worked inconsistent hours that regularly exceeded twelve.[23] Defendant never tracked the amount of hours each employee worked, but,

---

[17]    See id.

[18]    See Doc. 243-1, Ex. 1 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Decl. of Steve Mitchell p. 3-4.

[19]    See id.

[20]    See id.

[21]    See id.

[22]    See Doc. 186, App. to Pl.'s Mot. for Partial Summ. J., Pl.'s Acknowledgement Form p. 78 ("I will be paid a flat sum for a day's work for [Defendant], without regard to the number of hours worked in the day."); App. to Pl.'s Mot. for Partial Summ. J., Employee Logs pp. 106-126.

[23]    See Doc. 185, Pl.'s Mot. for Partial Summ. J. p. 3; Doc. 242, Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. p. 5; Doc. 186, App. to Pl.'s Mot. for Partial Summ. J., Decl. of Pl.  p. 3-4; Doc. 243-1, Ex. 1 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Decl. of Steve Mitchell p. 3-4.

rather, kept track of the number of days each worked.[24] Defendant claims that its employees were required to receive authorization to work more than 87.5 hours a week.[25]

In 2013, a lawsuit with similar allegations to the present suit was filed. See Sandel v. Fairfield Indus. Inc, 2015 WL 7709583, at *1 (S.D. Tex. June 25, 2015). As a result of the suit, in 2013, Defendant sent a memorandum to its employees to explain its pay plan.[26] Defendant also circulated a form for employees to sign acknowledging that their day rate included overtime.[27] After additional confusion, Defendant sent another memorandum attempting to clarify the pay plan, accompanied by another acknowledgement form.[28] Defendant alleges that, following the Sandel lawsuit, it began keeping spreadsheets containing each "employee's current pay, hourly rate, daily hours, day rate, overtime hours, overtime pay and weekly pay."[29]

A second component of Defendant's pay plan included its

---

[24]    See Doc. 186, App. to Pl.'s Mot. for Partial Summ. J., Comb Dep. p. 37 (pp. 15-16 of Dep.).

[25]    See Doc. 245, Ex. 3 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Decl. of Comb p. 4-5.

[26]    See Doc. 243-1, Ex. 1 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Decl. of Steve Mitchell pp. 5-6.

[27]    See id. p. 6-7.

[28]    See id. p. 5-6.

[29]    See Doc. 242, Def.'s Resp. to Pl.'s Mot. for Partial Summ. J. p. 7; Ex. 1 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Decl. of Steve Mitchell p. 6-7.

accrued-days-off policy. In 2000, Defendant began giving employees one paid day off per day worked.[30] Thus, because Defendant's employees worked four-or five-week shifts followed by an equal amount of days off, they essentially received pay for every day whether they were working a shift or not. As a result of the policy, Defendant's employees' day rate was decreased.[31] Defendant alleges that the "generous" days-off policy was initiated to provide its employees with a more consistent stream of income.[32]

Defendant discontinued the day-rate and days-off policies on December 19, 2015.[33] Defendant paid Plaintiffs pursuant to the day-rate plan and days-off policy from 2000 through December 2015.[34] Defendant ceased all operation and ownership of vessels in May 2016.[35]

## B.  Procedural Background

Plaintiff filed his complaint on July 15, 2016, alleging violations of the FLSA.[36] Plaintiff filed an amended complaint on

---

[30]     See id. pp. 7-8.

[31]     See id.

[32]     See id. pp. 6-7.

[33]     See id. pp. 7-8.

[34]     See id.

[35]     See Doc. 245, Ex. 3 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Decl. of Comb p. 4-5.

[36]     See Doc. 1, Pl.'s Compl.

September 26, 2016.[37]

Plaintiff filed a motion to certify class on November 14, 2016, seeking to certify the following class: "All current and former seismic crewmembers employed by [Defendant] and paid on a day-rate basis at any time during the last three years."[38]   The proposed class of seismic crewmembers includes: "observers (i.e., the linesman (or line chiefs), junior observers, shift lead observers, chief observers, and party managers); the gun department (i.e., gun mechanic helpers, gun mechanic trainees, gun mechanics, gun shift leaders, and gun mechanic chiefs); the mechanics (i.e., compressor mechanics and back deck mechanics); the navigators (i.e., the navigators, shift lead navigators, and chief navigators); and marine mammal observers.[39]  On March 27, 2017, in a memorandum opinion, the court conditionally certified Plaintiff's proposed class.[40]   However, at the same time, the court dismissed all marine crewmembers who had opted into Plaintiff's lawsuit as they were not seismic crewmembers.[41]

At the time of the court's opinion, over forty putative class

---

[37]   See Doc. 41, Pl.'s 1st Am. Compl.

[38]   Doc. 59, Pl.'s Mot. to Certify Class p. 2.

[39]   See id.

[40]   See Doc. 77, Mem. Op. Dated Mar. 27, 2017.

[41]   See id. p. 13.

members had opted into the lawsuit.[42] Since the court conditionally certified Plaintiff's proposed class, over ninety additional putative class members have opted into the lawsuit.[43]

On April 11, 2018, Plaintiff filed its pending motion for partial summary judgment.[44] On May 4, 2018, Defendant filed its pending motion for summary judgment.[45] On May 4, 2018, Defendant filed its pending motion for decertification.[46] Following an unopposed motion, the court dismissed seven inactive opt-in plaintiffs on May 11, 2018.

On May 16, 2018, Defendant responded to Plaintiff's motion for partial summary judgment.[47] On May 25, 2018, Plaintiff responded to Defendant's motion for summary judgment.[48] In June 2018, Plaintiff responded to Defendant's motion for decertification, and the parties filed replies to all three pending motions.[49]

---

[42]    See Docs. 5-14, 16-22, 25-31, 34-36, 40, 47-51, 53-54, 56-57, 64, 66, 76, Consents to Join a Collective/Class Action.

[43]    See Docs. 78-126, 129-167, 170-172, Consents to Join a Collective/Class Action.

[44]    See Doc. 185, Pl.'s Mot. for Partial Summ. J.

[45]    See Doc. 191, Def.'s Mot. for Summ. J.

[46]    See Doc. 207, Def.'s Mot. for Decertification.

[47]    See Doc. 242, Def.'s Resp. to Pl.'s Mot. for Partial Summ. J.

[48]    See Doc. 265, Pl.'s Resp. to Def.'s Mot. for Summ. J.

[49]    See Doc. 271, Pl.'s Resp. to Def.'s Mot. for Decertification; Doc. 267, Pl.'s Reply in Support of Mot. for Partial Summ. J.; Doc. 268, Def.'s Reply in Support of Mot. for Summ. J.; Doc. 272, Def.'s Reply in Support of Mot. for Decertification.

## II.  Summary Judgment Standard

Summary judgment is warranted when the evidence reveals that no genuine dispute exists on any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Stauffer v. Gearhart, 741 F.3d 574, 581 (5th Cir. 2014).  A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ameristar Jet Charter, Inc. v. Signal Composites, Inc., 271 F.3d 624, 626 (5th Cir. 2001).  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.  See Royal v. CCC & R Tres Arboles, L.L.C., 736 F.3d 396, 400 (5th Cir. 2013)(quoting Anderson, 477 U.S. at 248).

The movant must inform the court of the basis for the summary judgment motion and must point to relevant excerpts from pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of genuine factual issues.  Celotex Corp., 477 U.S. at 323; Topalian v. Ehrman, 954 F.2d 1125, 1131 (5th Cir. 1992).  The movant may meet this burden by demonstrating an absence of evidence in support of one or more elements of the case for which the nonmovant bears the burden of proof.  See Celotex Corp., 477 U.S. at 322; Exxon Corp. v. Oxxford Clothes, Inc., 109 F.3d 1070, 1074 (5th Cir. 1997).  If the moving party carries its

burden, the nonmovant may not rest on the allegations or denials in his pleading but must respond with evidence showing a genuine factual dispute. <u>Stauffer</u>, 741 F.3d at 581 (citing <u>Hathaway v. Bazany</u>, 507 F.3d 312, 319 (5th Cir. 2007)).

### III.  Legal Standard

The FLSA requires covered employers to pay non-exempt employees time and a half for hours worked in excess of forty hours in a week.  29 U.S.C. § 207(a).  It allows employees to bring an action against their employers for violation of its hour and wage provisions.  <u>See</u> 29 U.S.C. §§ 215-216.  An employee may bring this action against his employer on "behalf of himself . . . and other employees similarly situated.  No employee shall be a party plaintiff to any such an action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b). Courts have the authority to implement the representative action process by facilitating notice to potential plaintiffs, in other words, to persons alleged to be "similarly situated" to the named plaintiff(s).  <u>Hoffman-La Roche, Inc. v. Sperling</u>, 493 U.S. 165, 171-74 (1989).

In the Fifth Circuit, the determination of whether plaintiffs are similarly situated is generally made by using one of two analyses: (1) the two-step analysis described in <u>Lusardi v. Xerox Corp.</u>, 118 F.R.D. 351, 359 (D.N.J. 1987); or (2) the "spurious

class action" analysis described in <u>Shushan v. Univ. of Colo.</u>, 132 F.R.D. 263 (D. Colo. 1990). <u>See</u> <u>Mooney v. Aramco Servs. Co.</u>, 54 F.3d 1207, 1216 (5th Cir. 1995) (expressly declining to decide which of the two analyses is appropriate).[50]

In the earlier memorandum opinion, the court chose to analyze Plaintiff's claims pursuant to <u>Lusardi</u>.[51] Under the <u>Lusardi</u> approach, the court first "determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." <u>Acevedo v. Allsup's Convenience Stores, Inc.</u>, 600 F.3d 516, 519 (5th Cir. 2010) (citing <u>Mooney</u>, 54 F.3d at 1213-14). The court makes this determination by using a fairly lenient standard, requiring only "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." <u>Mooney</u>, 54 F.3d at 1214 & n.8. If the court determines that the employees are similarly situated, then notice is sent and new plaintiffs may "opt in" to the lawsuit. <u>Acevedo</u>, 600 F.3d at 519 (citing <u>Mooney</u>, 54 F.3d at 1214).

The second stage of the <u>Lusardi</u> approach—the "decertification stage"—is typically precipitated by the defendant filing a motion to decertify after the opt-in period has concluded and discovery is

---

[50]    <u>Mooney</u> was an action under the Age Discrimination in Employment Act ("ADEA"), but it is informative here because the ADEA explicitly incorporates Section 216(b) of the FLSA to also provide for an "opt-in" class action procedure for similarly-situated employees. <u>See</u> <u>Mooney</u>, 54 F.3d at 1212.

[51]    <u>See</u> Doc. 77, Mem. Op. Dated Mar. 27, 2017, p. 9.

largely complete.  Id.  "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question."  Id.  If the court finds the claimants are no longer made up of similarly situated persons, it decertifies the class and dismisses the opt-in plaintiffs without prejudice.  Id.  If the class is still similarly situated, the court allows the collective action to proceed.  Id. The present case is at the "decertification stage" of the Lusardi analysis.

## IV. Analysis

Plaintiff moves for partial summary judgment and asks that the court find that: (1) Defendant's "pay practices violated the FLSA;" (2) Defendant's violation was willful; (3) there was not a "good-faith basis for [Defendant's] pay practices;" (4) "the seismic crewmembers were not exempt executive, administrative or professional employees;" (5) the seismic crewmembers were not exempt seamen;" and (6) the seismic crewmembers did not qualify for the FLSA's foreign exemption.[52]

Defendant also moves for summary judgment and requests that the court find that: (1) its pay practices did not violate the FLSA; (2) Plaintiffs are not entitled to compensation for time spent unloading groceries, attending safety meetings, or participating in safety drills; (3) Defendant's payments for

---

[52]     See Doc. 185, Pl.'s Mot. for Partial Summ. J. p. 1.

accrued days off are excluded from the regular rate for overtime purposes; and (4) Plaintiffs cannot prove damages because they failed to provide damages calculations.  Additionally, Defendant moves for decertification of Plaintiff's conditionally certified class on the basis that: (1) Plaintiff cannot establish liability on a class-wide basis; (2) Defendant "has numerous individualized defenses that are not uniformly applicable to the entire class;" and (3) "fairness and procedural considerations require decertification."

The court begins by noting that Plaintiff has made numerous objections to Defendant's summary judgment evidence.  The court finds it unnecessary to rely on any of the objected-to material in making its rulings.  Accordingly, the court declines to rule on Plaintiff's objections.

## A. <u>Liability Under the FLSA</u>

Both parties have moved for summary judgment on the issue of whether Defendant's pay practices violated the FLSA.  The major question before the court is whether Defendant's pay practices complied with Section 778.309 of Title 29 of the Code of Federal Regulations ("CFR Title 29"), which provides statements of general policy or interpretation of the FLSA's provisions.  Section 778.309 provides that:

> Where an employee works a regular fixed number of hours
> in excess of the statutory maximum each workweek, it is,
> of course, proper to pay him, in addition to his
> compensation for nonovertime hours, a fixed sum in any

13

such week for his overtime work, determined by
multiplying his overtime rate by the number of overtime
hours regularly worked.

29 C.F.R. § 778.309.  Conversely, Section 778.310 of CFR Title 29

provides that:

A premium in the form of a lump sum which is paid for
work performed during overtime hours without regard to
the number of overtime hours worked does not qualify as
an overtime premium even though the amount of money may
be equal to or greater than the sum owed on a per hour
basis. . . . **The reason for this is clear. If the rule
were otherwise, an employer desiring to pay an employee
a fixed salary regardless of the number of hours worked
in excess of the applicable maximum hours standard could
merely label as overtime pay a fixed portion of such
salary sufficient to take care of compensation for the
maximum number of hours that would be worked.** The
Congressional purpose to effectuate a maximum hours
standard by placing a penalty upon the performance of
excessive overtime work would thus be defeated. For this
reason, where extra compensation is paid in the form of
a lump sum for work performed in overtime hours, it must
be included in the regular rate and may not be credited
against statutory overtime compensation due.

29 C.F.R. § 778.310 (emphasis added).

From the plain language of CFR Title 29, it is clear that

Defendant's daily rate pay policy is only in compliance with the

FLSA if Plaintiffs worked a fixed number of hours each day.  While

somewhat counterintuitive, it is also evident that the FLSA

prohibits paying a fixed daily sum where the hours vary, but never

go above a set maximum.  For example, it is proper under the FLSA

to pay a fixed sum of $1,060 per week for exactly 84 hours of work

14

each week and to characterize this as a $10 per hour base-rate.[53]
However, it would be improper to pay the same rate of $1,060 per
week for a varying number of hours each week even if the varying
number of hours never exceeded 84. Although the second scenario
would seem to benefit the worker as he would make the same pay,
never work more than he did in the first scenario, and would
presumably work less on occasion, such a scenario is expressly
prohibited because it is against the purpose of the FLSA to
"effectuate a maximum hours standard." See 29 C.F.R. § 778.310.

The parties have presented evidence that suggests both of the
above scenarios were occurring. Accordingly, summary judgment is
not appropriate for either party. It is necessary that a jury
determine whether the facts of the case are consistent with Section
778.309 or Section 778.310. Both parties' motions for summary
judgment on this issue are **DENIED.**

## B.   <u>Willfulness of Defendant's Violation</u>

Plaintiffs also ask the court to find that Defendant's
violation of the FLSA was willful, and therefore, Plaintiffs may
avail themselves of the FLSA's three-year statute of limitations
for willful violations rather than the FLSA's standard two-year
statute of limitations.[54] Fact issues regarding the number of hours

---

[53]     Twelve hours per day at seven days per week equates to 84 hours per
week. $10 x 84 = $840.  $5 (overtime premium) x 44 (overtime hours) = $220.  $840
+ $220 = $1,060.

[54]     <u>See</u> Doc. 185, Pl.'s Mot. for Partial Summ. J. p. 20.

15

actually worked by Plaintiffs preclude a finding that the FLSA was violated.  Accordingly, the court cannot rule on the willfulness of an undetermined violation.  Plaintiff's motion for summary judgment on this issue is **DENIED.**

C.  **Defendant's Good Faith Defense**

Plaintiffs argue that Defendant's good faith defenses should be dismissed because Defendant has not pled any supporting facts. Defendant pled its good faith defense by stating "[Defendant's] actions were taken in good faith, and [Defendant] had reasonable grounds for believing that its actions were in compliance with the FLSA; therefore, [P]laintiff is not entitled to liquidated damages."[55] "To successfully plead a good faith defense under the FLSA, merely pleading 'good faith' is sufficient to provide the plaintiff with fair notice of the nature of the defense." Franks v. Tyhan, Inc., 2016 WL 1531752, at *3 (S.D. Tex. Apr. 15, 2016). Defendant has met this low pleading bar.  Additionally, by providing evidence that Defendant sought and followed the advice of counsel before implementing the pay plan at issue, Defendant has provided evidence supporting its good faith defense.  For these reasons, Plaintiff's motion for summary judgment on Defendant's good faith defense is **DENIED.**[56]  This is an issue for the trier of

---

[55]    See Doc. 75, Def.'s 1st Am. Ans. to Pl.'s 1st Am. Compl. p. 8.

[56]    See Doc. 243-1, Ex. 1 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Declaration of Steve Mitchell p. 3.

fact.

**D.  <u>Defendant's FLSA Exemptions Defenses</u>**

Plaintiff moves for summary judgment on Defendant's defenses that the class fell under the FLSA exemptions for executive, administrative, or professional employees.  Plaintiff likewise moves for summary judgment on Defendant's defenses that the class fell under the FLSA's seamen and foreign exemptions.

**1.    Seamen Exemption**

Seamen are exempt from the FLSA's hours requirements.  29 U.S.C. § 213(b)(6).  An employee is regarded as a seamen under the FLSA "if he performs, . . . aboard a vessel, service which is rendered primarily as an aid in the operation of such vessel as a means of transportation, provided he performs no substantial amount of work of a different character."  29 C.F.R. § 783.31.  Defendant acknowledges that most of the Plaintiffs who qualified for the seamen exemption have been dismissed from the lawsuit and that the seismic employees do not qualify for the exemption.  However, Defendant maintains, and supports with appropriate evidence, that Plaintiffs Michael Barnhill and Amos Payton worked at both seismic and marine crew positions, the latter of which qualifies for the seamen exemption defense, during the relevant time periods.[57]  Accordingly, the seamen exemption defense survives summary

---

[57]    <u>See</u> Doc. 249, Ex. 7 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Barnhill Dep.; Doc. 253 Ex. 17 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Payton Dep.

judgment, but only as to Michael Barnhill and Amos Payton.

**2.    Executive, Administrative, or Professional Exemption**

Plaintiff moves for summary judgment on Defendant's executive, administrative, and professional exemption defenses.  The court addresses all three defenses collectively as they are dismissed for the same reason.  Common to all three exemption defenses is that the employee be "[c]ompensated on a salary or fee basis pursuant to § 541.600 . . . ."  29 C.F.R. §§ 541.100(a)(1), 541.200(a)(1), 541.300(a)(1).  "An employee will be considered to be paid on a 'salary basis' within the meaning of this part if the employee regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed."  29 C.F.R. § 541.602.  Section 541.604(b) of CFR Title 29 addresses day rates and provides that:

> [a]n exempt employee's earnings may be computed on an hourly, a daily or a shift basis, without losing the exemption or violating the salary basis requirement, if the employment arrangement also includes a guarantee of at least the minimum weekly required amount paid on a salary basis **regardless of the number of hours, days or shifts worked,** and a reasonable relationship exists between the guaranteed amount and the amount actually earned.

The evidence clearly establishes that Defendant tracked the number of days each employee worked and paid each by multiplying days

18

worked by the employee's day rate.[58]  Thus, Plaintiffs were paid
based on the number of days worked not on a salary basis.
Accordingly, Plaintiff's motion on this issue is **GRANTED**.

### 3.  Foreign Exemption

The FLSA does not apply "to any employee whose services during
the workweek are performed in a workplace within a foreign country
or within territory under the jurisdiction of the United States .
. . ."[59]  29 U.S.C. § 213(f).  Defendant argues that the exemption
applies to certain Plaintiffs employed on vessels that were near
foreign countries.  Plaintiff argues that the exemption does not
apply to employees who work aboard vessels.

This issue was recently addressed in Kaluom v. Stolt Offshore,
Inc., 474 F. Supp. 2d 866 (S.D. Tex. 2007).  The Kaluom court found
that "the Fifth Circuit . . . definitively [found] that a United
States flag vessel is considered American territory."  Id. at 879
(quotation marks omitted).  The Kaluom court then reasoned that:

> [i]f the Fifth Circuit considers U.S. vessels to be U.S.
> "territory," then would not § 213(f) of the FLSA, which
> does not delineate vessels as being one of the protected
> territories, prohibit the FLSA's applicability to all
> U.S. vessels? While the plain language of the subsection,
> read alone, would support such a conclusion, the answer
> is "no." One need only consider the other subsections of

---

[58]  See Doc. 186, App. to Pl.'s Mot. for Partial Summ. J., Comb Dep. p.
37 (pp. 15-16 of Dep.) & Employee Logs pp. 106-126.

[59]  The following U.S. territories are an exception: "a State of the
United States; the District of Columbia; Puerto Rico; the Virgin Islands; outer
Continental Shelf lands defined in the Outer Continental Shelf Lands Act (ch.
345, 67 Stat. 462) [43 U.S.C. 1331 et seq.]; American Samoa; Guam; Wake Island;
Eniwetok Atoll; Kwajalein Atoll; and Johnston Island."  29 U.S.C. § 213(f).

§ 213 to realize that if such an interpretation were made, the subsections would clearly be in conflict. Section 213(a)(12) exempts "any employee employed as a seaman on a vessel other than an American vessel" from the FLSA minimum wage and maximum hour requirements. There would be no need to differentiate between seamen in American and non-American vessels at all if Congress had intended for § 213(f) to exempt workers on all vessels. Also, § 213(b)(6) exempts "any employee employed as a seaman" from the maximum hour provisions, but not from the minimum wage provisions, of the Act. If § 213(f) exempted all workers on vessels from all the provisions of the FLSA, then why would Congress have specifically exempted seamen from the maximum hour provisions and not the minimum wage provisions? It is clear that Congress did not intend for § 213(f) to apply to seamen and vessels at all. Instead, § 213(f) applies to specific geographical locations.

Id. at 879-880. The court finds the reasoning in Kalulom persuasive. Accordingly, Plaintiff's motion is **GRANTED** with respect to Plaintiffs who worked aboard American vessels. However, any Plaintiffs who worked aboard non-American flagged vessels are expressly exempted from the FLSA's minimum wage and maximum hours requirements. 29 U.S.C. § 213(a)(12). Defendant has presented evidence that some Plaintiffs may have worked aboard non-American vessels for some or all of the relevant period.[60] Thus, Plaintiff's motion is **DENIED** with respect to any Plaintiffs who worked aboard non-American flagged vessels.

---

[60] See Doc. 252, Ex. 14 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Brad Lyles Dep. pp. 57-58; Doc. 251, Ex. 13 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Neal Estay Dep. pp. 95-96; Doc. 253, Ex. 17 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Gerald Price Dep. pp. 36-37; Doc. 250, Ex. 8 to Def.'s Resp. to Pl.'s Mot. for Partial Summ. J., Nicholas Bradford Dep. p. 48.

## E.  **<u>Plaintiffs' Compensable Hours</u>**

Defendant argues that Plaintiffs cannot be compensated for the time they spent unloading groceries, participating in safety drills, and attending safety meetings.  An activity must be "integral and indispensable to the principal activities that an employee is employed to perform" in order to be compensable under the FLSA.  <u>Integrity Staffing Sols., Inc. v. Busk</u>, 135 S. Ct. 513, 519 (2014).  In <u>Sandel v. Fairfield Inc.</u>, a lawsuit briefly discussed above where another group of Defendant's seismic employees alleged violations of the FLSA, this exact issue was addressed.  2015 WL 7709583, at *1 (S.D. Tex. June 25, 2015).  The <u>Sandel</u> court found that the safety meetings were indispensable to the principal activities that Plaintiffs were required to perform because:

> [t]here were numerous chances for harm both to the employees and the public at large on and around a major vessel.  The required safety meetings were to ensure a safe workplace for the employees themselves and all other persons the ship might encounter in the ordinary course of business. Accordingly, Defendant's Motion for Summary Judgment that attendance at mandatory safety meetings was not compensable is denied.

<u>Id.</u> at 5.  The <u>Sandel</u> court also found that:

> "general housekeeping duties, such as the unloading of groceries and other similar tasks, which were simply a part of living aboard a sea-going vessel, are not compensable.  Whether such activities were required or not is without legal consequence.  Rather the determination of compensability turns on whether the activity is "integral and indispensable to the principal activities that an employee is employed to perform. Moving groceries and general housekeeping do not rise to

> the level of integral and indispensable as the Supreme
> Court would recognize it for the purposes of seismic data
> collection work.

Id. (citations and quotations omitted).

The court finds the Sandel court's analysis of these issues persuasive. While the Sandel court addressed safety meetings and not drills, the court finds that the analysis applies equally to both. Accordingly, Defendant's motion for summary judgment on the compensable hours issue is **GRANTED** as to Plaintiffs' time spent unloading groceries and **DENIED** as to the other compensable-hour categories.

## F.    Plaintiffs' Paid Days Off

Defendant asks that the court find that Defendant's payments for accrued days off must be excluded from the regular rate for overtime purposes. This issue was also addressed by the Sandel court. The Sandel court reasoned that before 2000, Defendant's employees received all of their compensation during the 28-or 35-day shifts that they worked. Id. at 3. However, Defendant began withholding a portion of its employees' pay so that half was paid during their shifts and half was paid during their time off. Id. As in the present case, Defendant argued in Sandel that 29 C.F.R. § 778.200(a)(2) and 29 U.S.C. § 207(e)(2) explicitly allowed "vacation time to be excluded from the computation of total enumeration for the purposes of an overtime rate calculation." Id. at 4.

Section 778.200(a)(2) and Section 207(e)(2) provide that an employee's regular rate does not include "[p]ayments made for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause . . . ." The <u>Sandel</u> court found that the 28-or 35-day-off periods "do not count as 'vacation' as the statute would have it mean." <u>Id.</u> The <u>Sandel</u> court reasoned that the statutes contemplated "variable vacation time taken off by the employee" not regular periods of work followed by equal time off as in the present case. <u>Id.</u> The <u>Sandel</u> court also noted the difficulty in crediting Defendant's explanation because, if true, in one year, the Plaintiffs would earn approximately six months of vacation for six months of work. <u>Id.</u> n. 3.

The court notes that the parties have argued over whether the <u>Sandel</u> court's holding on this issue is binding in the present case. The court finds it unnecessary to consider whether the <u>Sandel</u> court's holding is binding because the court finds the <u>Sandel</u> court's analysis on the time-off duty issue persuasive. Accordingly, Defendant's motion for summary judgment on the time-off duty issue is **DENIED**.

## G.  <u>Plaintiffs' Damages Calculations</u>

Defendant argues that Plaintiffs failed to disclose damages computations so Plaintiffs' entire case should be dismissed. Federal Rule of Civil Procedure ("FRCP") 26 provides that "a party

must . . . provide to the other parties . . . a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based . . . ."  FRCP 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Plaintiff has provided Defendant with a damages summary that indicates the total amount of damages incurred by each Plaintiff depending on whether a two-year or three-year statute of limitations is used.[61]  To the extent Plaintiff's disclosure was untimely, the court finds that Defendant was not harmed.  The court finds that Plaintiff's disclosure is adequate at the current stage in the litigation.  Whether or not this evidence will be adequate at trial is a matter not addressed by the court.  Defendant's motion for summary judgment regarding failure to disclose damages calculations is **DENIED.**

**H.**   **Motion to Decertify**

The remaining question before the court in the second step of the Lusardi analysis is whether the potential class members are

_____

[61]    See Doc. 266, App. to Pl.'s Resp. to Def.'s Mot. for Summ. J., Pl.'s 1st Supp. Disclosures pp. 102, 106-108.

similarly situated. Potential class members are considered similarly situated to the named plaintiff if they are:

> "similarly situated" with respect to their job requirements and with regard to their pay provisions. The positions need not be identical, but similar. A court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice.

Yaklin v. W-H Energy Servs., Inc., No. C-07-422, 2008 WL 1989795, at *2 (S.D. Tex. May 2, 2008) (Jack, J.) (unpublished) (internal quotations and citations omitted). If the job duties among putative class members vary significantly, then class certification should be denied. See, e.g., Dreyer, 2008 WL 5204149, at *3; Aguirre v. SBC Commc'ns, Inc., No. H-05-3198, 2007 WL 772756, at *9 (S.D. Tex. Mar. 12, 2007) (Rosenthal, J.) (unpublished).

Defendant moves for decertification of Plaintiff's conditionally certified class on the basis that: (1) Plaintiff cannot establish liability on a class-wide basis; (2) Defendant "has numerous individualized defenses that are not uniformly applicable to the entire class;" and (3) "fairness and procedural considerations require decertification."

## 1.  Class-wide Liability

As discussed more thoroughly above, the court finds that a fact issue exists on whether Plaintiff can show Defendant's class-wide liability. Plaintiffs have met their burden regarding Defendant's first argument.

### 2. Individualized Defenses

Defendant lists the following as "individualized defenses that are not uniformly applicable to the entire class:" (1) "defenses to liability and damages;" (2) "[s]ome [P]laintiffs are exempt from the overtime requirements of the FLSA;" (3) "[s]ome [P]laintiffs' claims are time-barred;" (4) "credibility issue plague some Plaintiffs;" (5) "[s]ome [P]laintiffs' claims are subject to credit and/or offset;" and (6) "[a]dditional defenses are available against certain [P]laintiffs."[62]

### a. Liability and Damages Defenses

Many of the individual liability and damages issues of which Defendant complains are a direct result of Defendant's failure to keep proper records of the hours worked by each employee. See 29 U.S.C. § 211(c) ("Every employer . . . shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him . . . ."). Defendant only kept logs of the days each employee worked without recording the hours worked each day.[63]

Defendant identifies the differences in the number of hours

---

[62]    See Doc. 207-2, Def.'s Mem. in Support of Mot. for Decertification pp. 13-23.

[63]    Defendant claims that following the Sandel lawsuit, it began keeping more detailed records that include hours worked. However, the only spreadsheets found in the summary judgment evidence are unconvincing. See Doc. 186, App. to Pl.'s Mot. for Partial Summ. J., Employee pay rate logs pp. 128-132. The spreadsheets merely list what each employee was paid per day and then broke down how each employee's pay was allocated based on a 12.5 hour day. The spreadsheets do not show when and for how long each employee worked.

worked between each Plaintiff as a major issue for trying the case on a collective basis. Defendant believes that each Plaintiff will have to prove that they were not compensated for more than 47.5 hours of overtime each week. However, to show class-wide liability, Plaintiffs need only show that they were not working a consistent amount of hours each day. If class-wide liability is established, then Plaintiffs will need to prove their individual damages. Decertifying the class because the individuals within the class did not suffer the exact same amount of damages would erroneously result in the decertification of almost all FLSA class actions.

### b.    Exemption Defenses

As discussed above, most of Defendant's exemption defenses are factually not applicable. The remaining exemption defenses affect only a small number of Plaintiffs and will likely only affect the amount of uncompensated overtime the affected Plaintiffs can claim under the FLSA. The court finds that the small burden of these individual defenses does not necessitate decertifying the entire class. If Defendant still believes that any class member is completely exempted, it may raise the issue in a Rule 50 motion.

### c.    Time-barred Claims

None of the Plaintiffs' claims are time-barred if Plaintiffs can prove that Defendant willfully violated the FLSA. This question can be answered on a class-wide basis. If Defendant did

not willfully violate the FLSA it will be minimally time consuming to identify the claims that are outside of the FLSA's two-year statute of limitations. In fact, Plaintiffs have already identified the expected differences in damages for each Plaintiff under a two-year versus three-year statute of limitations.[64] This issue can primarily be dealt with class-wide, and, to the extent that it cannot, it is too easily dealt with to necessitate decertifying the class.

### d. Credibility Issues

Defendant argues that some of the Plaintiffs have credibility issues that will need to be addressed on cross-examination, making trying the case as a class action inefficient. Even if true, it would be inefficient to try the case individually. The case turns on whether Plaintiffs were paid a fixed daily rate for a varied number of hours.

### e. Credit or Offset of Claims

Defendant's argument regarding the credit or offset of some of the Plaintiffs' claims is rejected because these issues can be addressed if liability is established on a class-wide basis. The fact that a few Plaintiffs may have their claims credited or offset does not necessitate that the entire class be decertified.

---

[64] See Doc. 266, App. to Pl.'s Resp. to Def.'s Mot. for Summ. J., Pl.'s 1st Supp. Disclosures pp. 102, 106-108.

### f.   Additional Defenses

In its additional defenses section, Defendant reargues its points regarding individual defenses to liability and damages, and exemption defenses.  These issues have already been addressed.  In addition, Defendant argues that a small number of Plaintiffs are subject to dismissal for failure to participate in discovery, failure to consent before the end of the opt-in period, and lack of standing.[65]  As discussed above, many of the Plaintiffs Defendant identifies as problematic have been dismissed since the filing of the pending motions.  The court declines to decertify the entire class over a few issues that are more properly addressed in a separate motion.

### 3.   Fairness and Procedural Considerations

Defendant's arguments regarding fairness and procedural considerations rehash issues previously considered.  Defendant argues that Plaintiff cannot fairly establish liability or damages with representative evidence.  For the reasons discussed above, the court declines to decertify the class on this basis.

As a whole, Plaintiffs claims arise from Defendant's generally applicable pay policy.  While Defendant is correct that some individual issues are present, the predominant issue is whether Defendant paid Plaintiffs a fixed daily rate for varied amounts of work.  Accordingly, Defendant's motion for decertification is

---

[65]     See id. p. 23.

**DENIED.**

### V. Conclusion

For the reasons set out above Plaintiff's motion for partial summary judgment is **GRANTED** as to: (1) Defendant's executive, administrative, and professional FLSA exemption defenses; (2) Defendant's seamen FLSA exemption defense, except against two Plaintiffs in a limited capacity as discussed above; (3) Defendant's foreign FLSA exemption defense against all Plaintiffs who worked aboard an American flagged vessel throughout the relevant time period. All other relief requested in Plaintiff's motion for summary judgment is **DENIED.** Defendant's motion for summary judgment is granted in part such that Plaintiff cannot claim hours worked for time spent unloading groceries. All other relief requested by Defendant's motion for summary judgment is **DENIED.** Defendant's motion for decertification is **DENIED.**

**SIGNED** in Houston, Texas, this 21st day of November, 2018.

_____
U.S. MAGISTRATE JUDGE